UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KUNIO TSUTSUMI, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ADVANCED POWER TECHNOLOGIES, INC., et al.,<br><br>    Defendants. | Case No. 2:12-cv-01784-MMD-VCF<br>[Consolidated with case no. 2:12-cv-01785-MMD-VCF]<br><br>ORDER<br><br>(Motions to Remand [Case No. 2:12-cv-1784-MMD-VCF, dkt. no. 14; Case No. 2:12-cv-01785-MMD-VCF] - dkt. no. 12;<br><br>Motions to Dismiss [Case No. 2:12-cv-1784-MMD-VCF - dkt. no. 4; Case No. 2:12-cv-01785-MMD-VCF - dkt. no. 4]) |

**I.    SUMMARY**

Before the Court are Plaintiffs' respective Motions to Remand (Case No. 2:12-cv-1784-MMD-VCF, dkt. no. 14; Case No. 2:12-cv-01785-MMD-VCF, dkt. no. 12), and Defendants' Motions to Dismiss (case no. 2:12-cv-1784-MMD-VCF, dkt. no. 4; case no. 2:12-cv-01785-MMD-VCF, dkt. no. 4). For the reasons stated below, the Motions to Remand are denied. The Motions to Dismiss are granted in part and denied in part.

**II.    BACKGROUND**

On May 1, 2013, the Court consolidated *Tsutsumi v. Advanced Power Technologies*, Case No. 2:12-cv-01784-MMD-VCF with *Teshigahara v. Global Smart Energy*, Case No. 2:12-cv-01785-MMD-VCF.[1] The cases present substantially similar facts and allegations. Below, the Court summarizes the allegations in both actions.

---

[1] Unless otherwise noted, references to the docket are to filings in the lead case, No. 2:12-cv-01784-MMD-VCF.

Plaintiffs in the earlier-filed action allege that from December 2009 through June 2010, Defendants O'Donnell and Mortensen began promoting and soliciting investments in Advanced Power Technologies ("APT") and Advanced Energy Oasis ("AEO") from Plaintiffs, under the pretense that these companies were subsidiaries and/or affiliates of the other. (Dkt. no. 1-1 at ¶ 5.) Their stated business plan was to develop alternative energy and power for vehicles, homes, and buildings. (*Id.*) However, Plaintiffs allege that the business plans were fictional, and that the investment scheme was an attempt to induce Plaintiffs into tendering investments that would never be repaid. (*Id.*) Each of the Plaintiffs' investments was made pursuant to written Subscription Agreements and Secured Promissory Notes issued by AEO.

In June 2011, O'Donnell and Mortensen approached Plaintiff Kimiko Teshigahara about Global Smart Energy, Inc. ("GSE") with essentially the same scheme. (Case No. 2:12-cv-01785-MMD-VCF, dkt. no. 1-1 at ¶ 4; *see also* pgs. 3-4.)

Plaintiffs were induced into believing that they would receive quarterly interest payments of 6% and the entire principal and accrued interest three years from the respective dates that the Subscription Agreements and Secured Promissory Notes were executed. (Dkt. no. 1-1 at ¶ 7.) Plaintiffs assert that Defendants made one annual interest payment to several of the Plaintiffs by using funds received from the other Plaintiffs. (*Id.* at ¶ 8.) After that point, all funds were fraudulently transferred to O'Donnell and Mortensen, either individually or to their affiliated third parties. (*Id.*)

Shortly before filing their Complaints, Plaintiffs were informed that APT, AEO, and GSE were out of money and would not be carrying out their business plans. (Dkt. no. 1-1 at ¶ 10.) On May 23, 2012, Plaintiffs filed suit in state court, alleging (1) fraud and conspiracy to commit fraud; (2) injunctive relief; (3) appointment of a receiver; (4) breach of fiduciary duty as well as the duties of care and loyalty; (5) accounting and constructive

///

///

///

trust; (6) breach of contract and breach of the covenant of good faith and fair dealing; (7) conversion and unjust enrichment; and (8) securities fraud under NRS Chapter 90.[2]

Defendants removed the cases on October 11, 2012. (Case No. 2:12:cv-01784-MMD-VCF, dkt. no. 1; Case No. 2:12-cv-01785-MMD-VCF, dkt. no. 1). Plaintiffs moved to remand (dkt. nos. 14 and 12, respectively), and Defendants filed Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6) (dkt. nos. 4 and 4, respectively).

**III.   MOTIONS TO REMAND**

Plaintiffs move to remand this case to state court, arguing (1) that removal was not timely; (2) there is no diversity of citizenship; and (3) this case does not present a federal question.

**A.   Legal Standard**

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress. U.S. Const. Art. III, § 2, cl. 1; *e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a).

If removal was improper and the federal court lacks jurisdiction, the federal court must remand the case to state court. 28 U.S.C. § 1447(c).

A district court analyzes jurisdiction "on the basis of the pleadings filed at the time of removal without reference to subsequent amendments." *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998). Courts strictly construe the removal statute against removal jurisdiction, and "[f]ederal jurisdiction *must* be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (emphasis added). The party seeking

---

[2] The Court notes that in some of their claims, Plaintiffs plead several different causes of action as a single cause of action. Should Plaintiffs choose to amend their Complaint to fix the deficiencies described herein, Plaintiffs are instructed to plead each separate cause of action as a separate claim.

3

removal bears the burden of establishing federal jurisdiction. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

To establish subject matter jurisdiction pursuant to diversity of citizenship, the party asserting jurisdiction must show: (1) complete diversity of citizenship among opposing parties and (2) an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a).

**B.  Timeliness**

Plaintiffs argue that Defendants waited too long to remove this action, as Defendants removed the case more than thirty (30) days after Mortensen and O'Donnell were served.

Plaintiffs' arguments regarding timeliness are themselves untimely. A plaintiff has thirty (30) days after the defendant files a notice of removal to make a motion to remand an action for any procedural defects in a defendant's removal. *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 939 (9th Cir. 2006). A remand motion made on the basis of any defect in removal other than lack of subject matter jurisdiction constitutes a procedural defect, and must be made within the 30-day time period. *See id.* at 939. Should the plaintiff fail to make such a motion, the plaintiff is considered to have consented to federal jurisdiction. *See id.* at 939-940. A "district court cannot remand *sua sponte* for defects in removal procedure."[3] *Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1193 (9th Cir. 2003).

Defendants removed this case on October 11, 2012. (Dkt. no. 1.) Plaintiffs filed their Motion to Remand to State Court on November 15, 2012.[4] (Dkt. no. 14.) More than thirty days lapsed from the time Defendants removed the case and Plaintiffs' Motions. The Court cannot remand the case on this ground.

---

[3]Conversely, jurisdictional bars to removal cannot be waived by the parties, and the Court must address jurisdictional bars *sua sponte*. *Wild Oats*, 456 F.3d at 940.

[4]The dates are the same in both this action and the later-filed, now-consolidated action. (*See* Case No. 2:12-cv-01785-MMD-VCF, dkt. nos. 1 and 12.)

4

## C. Diversity Jurisdiction

There is complete diversity among the parties: Plaintiffs are Japanese citizens while Defendants are either Texas or Nevada citizens. (*See* Case No. 2:12:cv-01784-MMD-VCF, dkt. no. 1 at ¶¶ 17, 18; dkt. no. 7 at ¶ 3; Case No. 2:12-cv-01785-MMD-VCF, dkt. no. 1 at ¶¶ 17, 18); *see also Turbay v. Bank of Am., N.A.*, No. 2:12-CV-1367-MMD-VCF, 2013 WL 1145212, at *2 (D. Nev. Mar. 18, 2013) (for complete diversity to exist, "all plaintiffs must be citizens of a different state than all defendants."). However, Plaintiffs argue that the "forum defendant rule" precludes removal here. That is, all Defendants except Lyle Mortensen are Nevada citizens (Mortensen is a Texas citizen, *see* dkt. no. 7 at ¶ 3). That rule holds that "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C § 1441(b).

Like the rule regarding the timeliness of removal discussed above, the forum defendant rule is a procedural rather than jurisdictional rule. *Wild Oats*, 456 F.3d at 939. Because over thirty (30) days have lapsed from the time Defendants removed the case and Plaintiffs' Motion, the Court cannot remand the case on this ground.

As diversity of citizenship exists, and the amount in controversy exceeds $75,000, removal was proper under 28 U.S.C. § 1332(a). The Court does not address the parties' respective arguments regarding whether or not federal question jurisdiction exists here, because the parties' complete diversity allows this case to proceed in federal court.

## IV. MOTIONS TO DISMISS

### A. Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and

conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 679. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged– but not shown–that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (*quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

**B.     Standing**

Defendants argue that Plaintiffs do not have "shareholder standing." The "shareholder standing rule" provides "a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons

other than good-faith business judgment." *Zurich Am. Ins. Co. v. Nat'l Fire & Marine Ins. Co.*, No. 2:12-CV-00264, 2012 WL 2934756, at *2 (E.D. Cal. July 18, 2012) (*citing Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990); *Shell Petroleum, N.V. v. Graves*, 709 F.2d 593, 595 (9th Cir. 1983) ("To have standing to maintain an action, a shareholder must assert more than personal economic injury resulting from a wrong to the corporation. A shareholder must be injured directly and independently of the corporation.")).

The issue of "whether the complaint alleges a direct or derivative claim . . . must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Mann v. GTCR Golder Rauner, LLC*, 483 F. Supp. 2d 884, 896 (D. Ariz. 2007) (*citing Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.3d 1031 (Del. 2004).

Plaintiffs do not bring their case on behalf of the corporate entities. Rather, they allege that the corporations and their principals, Mortensen and O'Donnell, devised a scheme to defraud Plaintiffs of their money *invested in* the corporations. Plainly, these claims are brought in Plaintiffs' individual capacities. Plaintiffs individually suffered the alleged harm, and only Plaintiffs, not the corporations, would benefit if Plaintiffs succeed on their claims. For Defendants to assert otherwise misconstrues the Complaints.

### C. Fraud and Conspiracy to Commit Fraud

#### 1. Failure to State a Claim

Defendants argue that the Complaints fail to state claims for fraud or conspiracy to commit fraud with particularity.

Conspiracy to commit fraud exists when there is "(1) a conspiracy agreement, i.e., a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another; (2) an overt act of fraud in furtherance of the conspiracy; and (3) resulting damages to the plaintiff." *Jordan v. State ex rel. Dept. of Motor Vehicles and Pub. Safety*, 110 P.3d 30, 51 (Nev. 2005),

7

*abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 181 P.3d 670 (Nev. 2008). "Thus, an underlying cause of action for fraud is a necessary predicate to a cause of action for conspiracy to defraud." *Id.*

In Nevada, the elements of fraud include: (1) a false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and, (4) damage to the plaintiff as a result of relying on the misrepresentation. *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998).

Fraud claims must meet a heightened pleading standard under Federal Rule of Civil Procedure 9(b), which requires a party to "state with particularity the circumstances constituting fraud." The plaintiff must plead with particularity "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* at 1108. However, when a plaintiff fails to plead fraud with particularity, "leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988).

Plaintiffs' allegations in the earlier-filed action do not meet the heightened pleading requirements of Rule 9(b). They list the who – O'Donnell, Mortensen, APT, and AEO; the what – a scheme to garner Plaintiffs' investment in a business venture that never existed, and then to take Plaintiffs' investment for themselves; and the when – December 2009 through June 2010. However, the Complaint does not state *where* this alleged fraud occurred, nor does it state *how* the fraudulent statement(s) was made – who made it? To whom – which specific Plaintiff? What was its content? Such particularized allegations of fraud are required to put Defendants on notice of their

8

allegedly wrongful misconduct; without the requisite specificity, Plaintiffs' claims for fraud and conspiracy to commit fraud must be dismissed without prejudice. *See Vess*, 317 F.3d at 1108.

Teshigahara's allegations likewise do not meet the heightened pleading requirements of Rule 9(b). He also lists the "who" (Mortensen, O'Donnell, and Teshigahara) and the "what" (fraudulent misrepresentations about the investment in GSE), but fails to allege the content of the misrepresentation(s). Without the requisite specificity, Teshigahara's claims for fraud and conspiracy to commit fraud must be dismissed without prejudice.

Because these related cases have been consolidated, should Plaintiffs choose to amend their allegations, they should do so in a jointly-filed Complaint.

### 2. Federal Claim under PSLRA

Plaintiffs do not bring a claim for fraud under the Private Securities Litigation Reform Act ("PSLRA"). Defendants' respective Motions to Dismiss this non-existent claim is denied. In the future, Defendants should not waste judicial resources or their own time by moving to dismiss causes of action which have not been pled.[5]

### D. Securities Fraud – NRS Chapter 90.570

NRS 90.570 states:

> In connection with the offer to sell, sale, offer to purchase or purchase of a security, a person shall not, directly or indirectly:
>
> 1. Employ any device, scheme or artifice to defraud;
>
> 2. Make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made not misleading in the light of the circumstances under which they are made; or

---

[5] In the earlier-filed action, Defendants assert that the PSLRA applies to Plaintiffs' fraud and securities fraud claims, because the Security Agreement there states that federal law applies when a federal cause of action is pled. Assuming *arguendo* that this choice-of-law provision is valid, it is not applicable to the claims in this action, which do not sound in federal law. Merely because "there is a substantial body of federal law governing claims of securities fraud" (dkt. no. 4 at 15) does not mean that all claims concerning securities fraud are federal claims, as there is also a significant body of non-preempted state securities law in every state in the nation.

9

> 3. Engage in an act, practice or course of business which operates or would operate as a fraud or deceit upon a person.

Both Complaints allege that Defendants O'Donnell and Mortensen made untrue statements about their business plans in a scheme to defraud the Plaintiffs. (*See* Case No. 2:12-cv-1784-MMD-VCF, dkt. no. 1-1 at 11-13; Case No. 2:12-cv-1785-MMD-VCF, dkt. no. 1-1 at 9-11.) However, neither Complaint alleges securities fraud with the particularity required by Federal Rule of Civil Procedure 9(b). The Complaints fail to allege how the alleged fraud occurred, or what fraudulent statements were made by which Defendants to which Plaintiffs. The allegations concerning this cause of action are more specific than the ones concerning fraud and conspiracy to commit fraud, but nevertheless fail to satisfy the requirements of Rule 9(b).

Defendant Mortensen's arguments to the contrary, presented solely in the later-filed action, are unavailing. Mortensen argues that the choice-of-law provision in the Promissory Note precludes this cause of action. He asserts that Teshigahara cannot bring a claim for violation of Nevada securities law because "such a claim is precluded by the Note, itself." (Case No. 2:12-cv-1785-MMD-VCF, dkt. no. 4.) Simply because the terms of the note are governed by Delaware law does not mean that Defendants did not violate Nevada securities law when selling securities in Nevada.

Further, the provision Mortensen points to is called the "governing law" provision, and it merely states that the Note is "governed by and construed in accordance with the internal laws of the State of Delaware," which does not mean that any controversy *concerning* the Note is likewise governed by Delaware law. In fact, the full terms of the provision Mortensen points to state that the Note is:

> governed by and construed in accordance with the internal laws of the State of Delaware, *without giving effect to the choice of law provisions.*

(*Id.*; emphasis added.) Notably, Mortensen omitted the latter portion of the "governing law" provision from their briefs.

Moreover, the Subscription Agreement contains a choice of law clause stating that Nevada law governs. (Case No. 2:12-cv-1785-MMD-VCF, dkt. no. 4 at 38.) That clause states:

> This Agreement will be interpreted, construed, and enforced in accordance with the laws of the State of Nevada, without giving effect to the application of the principles pertaining to conflicts of laws. Any proceeding arising between the parties in any manner pertaining or relating to this Agreement shall, to the extent permitted by law, be held in Clark County, Nevada.

(*Id.*) In fact, Mortensen does not make any reference to Delaware law in opposing Plaintiffs' other claims, which all arise under Nevada law — he even cites to Nevada cases in making their various arguments. (*See, e.g.*, Case No. 2:12-cv-01785-MMD-VCF, dkt. no. 4 at 12.) While the present Motions therefore do not ask the Court to rule on the validity or applicability of the forum-selection clauses, it would appear that the choice-of-law provisions require Nevada law apply to conflicts arising out of breach of the Subscription and Security Agreement.[6]

The Court takes note of Mortensen's lack of candor. Mortensen did not reproduce the entire "governing law" provision in his brief, instead citing to the portion of the clause containing language favorable to him, and replacing the remaining portion of the clause with an ellipsis. The definition of "ellipsis" is "the omission of one or more words that are obviously understood but that must be supplied to make a construction grammatically complete." *Ellipsis Definition*, Merriam-Webster, http://www.merriam-webster.com (2013). It is inappropriate to use an ellipsis to remove language from a relevant document merely because such language harms one's case. Moreover, Mortensen did not acknowledge the "choice of law" provision in the Subscription Agreement.

### E. Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

Defendants assert that these claims should be dismissed because Mortensen and O'Donnell are not parties to the promissory notes. After reviewing the agreements, it is

---

[6]The Subscription Agreement at issue in the earlier-filed action contains an identical choice of law provision. (Dkt. no. 4 at 42.)

1  evident that Mortensen and O'Donnell are not parties to the promissory notes or the
2  subscription agreements.[7]  (Case No. 2:12-cv-01784-MMD-VCF, dkt. no. 1-3; Case No.
3  2:12-cv-01785-MMD-VCF, dkt. no. 4, ex. 2.)  These claims are accordingly dismissed
4  without prejudice as to Defendants O'Donnell and Mortensen.[8]

5  The corporate entities have been properly served (*see* Case No. 2:12-cv-01784-
6  MMD-VCF, dkt. nos. 17 and 18; Case No. 2:12-cv-01785-MMD-VCF, dkt. no. 15),  but
7  have not filed any response to the Complaints.  Contrary to Defendants' assertions, the
8  claims for breach of the Promissory Note agreements need not be dismissed; rather
9  Plaintiffs may move for default judgment against the corporate entities on these claims.[9]

### F. Conversion and Unjust Enrichment

#### 1. Conversion

"Conversion is a distinct act of dominion wrongfully exerted over another's personal property in denial of, or consistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights."  *Evans v. Dean Witter Reynolds, Inc.*, 116 Nev. 598, 606, 5 P.3d 1043, 1048 (Nev. 2000).  "Whether a conversion has occurred is generally a question of fact for the jury."  *Id.*  Both Complaints set forth sufficient

---

[7] Although courts generally may not consider materials outside the pleadings on a motion to dismiss, courts can consider such documents if their "authenticity . . . is not contested and the plaintiffs complaint necessarily relies on them."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (ellipsis in original, quotation marks and citations removed).  Such is the case with the agreements at issue here.

[8] Plaintiffs may be able to re-plead these causes of action under a theory of alter ego/vicarious liability, and thus the claims are dismissed without prejudice rather than with prejudice.

[9] Defendants cite *Frow v. De la Vega*, 82 U.S. 552 (1872) for the proposition that default judgment cannot be entered against any defendant where the plaintiffs are proceeding on a theory of joint liability against the various defendants.  It is not evident from the face of the Complaints that Plaintiffs seek joint and several liability. In fact, courts have construed *Frow* narrowly. For example, in *Carter v. District of Columbia,* 795 F.2d 116 (D.C.Cir.1986), the D.C. Circuit held that that "in cases involving multiple defendants, a default order that is inconsistent with a judgment on the merits must be set aside only when liability is truly joint — that is, when the theory of recovery requires that all defendants be found liable if any one of them is liable — and when the relief sought can only be effective if judgment is granted against all."  *Whelan v. Abell*, 953 F.2d 663, 674-75 (D.C. Cir. 1992) (citing *Carter*).  This type of joint liability is not at issue here.

allegations of conversion: that the individual Defendants wrongfully exert dominion over Plaintiffs' investments in the corporate Defendants. Defendants' Motions to Dismiss these claims are accordingly denied.

### 2. Unjust Enrichment

"Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against fundamental principles of justice or equity and good conscience." *Topaz Mut., Inc., v. Marsh*, 108 Nev. 845, 856, 839 P.2d 606, 613 (Nev. 1992). "The essential elements of unjust enrichment are a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit." *Id.* (internal citations and quotations omitted). "An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) (*citing* 66 Am. Jur. 2d Restitution § 6 (1973)). "The doctrine of unjust enrichment or recovery in quasi-contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another [or should pay for]." *Leasepartners*, 942 P.2d at 187. However, at the motion to dismiss stage, a plaintiff may plead an unjust enrichment claim in the alternative where the validity of a relevant contract is in doubt. *See Johnson v. KB Home*, 720 F. Supp. 2d 1109, 1122 (D. Ariz. 2010).

The validity of the contracts is not in doubt here — rather, Plaintiffs assert that Defendants breached the contracts. Therefore, the unjust enrichment claims are dismissed as to the corporate Defendants. As the breach of contract claims have been dismissed against the individual Defendants, the unjust enrichment claims may proceed against them. Plaintiffs sufficiently plead that O'Donnell and Mortensen made promises to Plaintiffs regarding returns on their investments, but wrongfully retained Plaintiffs' investments for themselves or third-parties.

### G. Breach of Fiduciary Duty, Breach of the Duty of Care, Breach of the Duty of Loyalty

Defendants argue that these claims should be dismissed because directors only have fiduciary duties to their companies, not to individual investors. However, as stated above in the Court's standing discussion, investors may bring claims in their individual capacities, not only on behalf of corporations in a derivative capacity.

In the earlier-filed action, Defendants argue that Plaintiffs allege no legal relationship with Mortensen or O'Donnell. In the later-filed action, Defendants argue that Teshigahara does not allege a legal relationship with Mortensen. This is wrong. Plaintiffs in the earlier-filed action allege that O'Donnell and Mortensen were principals, officers, or directors of APT and AEO. (Case No. 2:12-cv-01784-MMD-VCF, dkt. no. 1-1 at ¶ 3.) Teshigahara alleges that Mortensen was a principal, officer, or director of GSE. (Case No. 2:12-cv-01785-MMD-VCF, dkt. no. 1-1 at ¶ 4.)

Defendants do not provide any other reason to dismiss these claims. Therefore, their Motions to Dismiss these claims are denied.

### H. Remedy Based Claims

Plaintiffs' causes of action for injunctive relief, appointment of a receiver, accounting, and constructive trust are remedies, not individual causes of action. *See Marzan v. Bank of Am.*, 779 F. Supp. 2d 1140, 1146 (D. Haw. 2011). Therefore, these claims are dismissed, but Plaintiffs may amend their Complaint to properly plead these counts as remedies rather than claims.

## V. MISJOINDER

Finally, Defendants argue that Plaintiffs fail to allege a transactional relationship between the corporate Defendants and Mortensen and O'Donnell, and thus joinder of Defendants was not proper.

Federal Rule of Civil Procedure 20(a)(2)(B) states that persons may be joined in one action as Defendants if "any question of law or fact common to all defendants will arise in the action." Because Plaintiffs allege that Mortensen and O'Donnell fraudulently

procured their investments in the corporate Defendants, there are common questions of fact and law between the Defendants.

Defendants also argue that the case should be severed, as the allegations against Mortensen are distinct from those against O'Donnell. For reasons discussed above, the Court disagrees. Accordingly, Defendants' requests to sever are denied.

## VI.     CONCLUSION

IT IS HEREBY ORDERED that Plaintiffs' Motions to Remand (Case No. 2:12-cv-01784-MMD-VCF, dkt. no. 14; Case No. 2:12-cv-01785-MMD-VCF, dkt. no. 12) are DENIED;

IT IS FURTHER ORDERED that Defendants' Motions to Dismiss (Case No. 2:12-cv-01784-MMD-VCF, dkt. no. 4; Case No. 2:12-cv-01785-MMD-VCF, dkt. no. 4) are GRANTED IN PART and DENIED IN PART as follows:

- The fraud, conspiracy to commit fraud, and NRS Chapter 90 claims are DISMISSED WITHOUT PREJUDICE;
- The breach of contract claims and breach of the duty of good faith and fair dealing claims are DISMISSED WITHOUT PREJUDICE as to Defendants O'Donnell and Mortensen, but the Motions are DENIED as to the corporate Defendants;
- The unjust enrichment claims are DISMISSED WITHOUT PREJUDICE as to the corporate Defendants, but the Motions are DENIED as to Defendants O'Donnell and Mortensen;
- The breach of fiduciary duty, breach of the duty of loyalty, and breach of the duty of care claims are DISMISSED WITH PREJUDICE;

///
///
///
///
///

- The remedy claims are DISMISSED, without prejudice to Plaintiffs requesting these remedies as relief in an amended complaint;
- The Motions to Dismiss are DENIED in all other regards.

ENTERED THIS 8th day of May 2013.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE