UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KUNIO TSUTSUMI, NOBUTSUGU OKUDA; TERUSHISA BOMUKAI; YUKIKIO KUREBAYASHI; EUN MEE KIM; KATSUYO YAMADA; REIKO HAYASE; KIMIKO TESHIGAHARA,<br><br>Plaintiffs,<br>v.<br><br>ADVANCED POWER TECHNOLOGIES, INC., a Nevada corporation; ADVANCED ENERGY OASIS, INC., a Nevada corporation; LYLE MORTENSEN, individually; FRANK O'DONNELL, individually; GLOBAL SMART ENERGY, INC., a Nevada corporation, DOES I-X and ROE BUSINESS ENTITIES I-X, inclusive,<br><br>Defendants. | Case No. 2:12-cv-01784-MMD-VCF<br><br>ORDER<br><br>(Def.'s Motion to Dismiss – dkt. no. 48) |

I.  **SUMMARY**

Before the Court is Defendants Lyle Mortensen and Frank O'Donnell's Motion to Dismiss. (Dkt. no. 48.) For the reasons discussed below, the Motion is granted in part and denied in part.

II.  **BACKGROUND**

This case arises out of an allegedly fraudulent investment scheme undertaken by Defendants Mortensen and O'Donnell (collectively, "Defendants") and their associated entities, Defendants Advanced Power Technologies, Inc. ("APT"), Advanced Energy Oasis, Inc. ("AEO"), and Global Smart Energy, Inc. ("GSE") (collectively, the "Corporate

Defendants"). Plaintiffs, a group of Japanese citizens, allege that they were induced to invest in APT, AEO, and GSE under false pretenses, and seek recovery of their investments. The allegations in the Complaint are summarized below.

From December 2009 through June 2011, Defendants began promoting and soliciting investments in APT, AEO, and GSE for development of alternative energy and power for vehicles, homes, and buildings. (Dkt. no. 42 at ¶ 8.) Defendants were the "principals and/or officers and/or directors" of APT, AEO, and GSE, which Defendants represented as subsidiaries and/or affiliates of the other. (*Id.* at ¶¶ 5, 8.) Defendants created business plans, executive summaries, and company overviews for the purpose of this solicitation, which represented that invested funds would be used to purchase equipment, and investors would be granted a security interest in that equipment. (*Id.* at ¶¶ 9, 10.) Defendants allegedly transmitted these documents to Plaintiffs both in Hawaii and Japan through an intermediary company — not a party to this action — acting as the agent of Defendants. (*Id.* at ¶ 26.)

In reliance on the representations, Plaintiffs loaned a collective total of $2.5 million to APT, AEO, and GSE pursuant to Subscription Agreements and Secured Promissory Notes issued by AEO and/or GSE. (*Id.* at ¶ 11, 12.) Under these Agreements, Plaintiffs were promised annual interest payments of 6% per annum and a balloon payment of the entire principal and accrued interest three years from the dates of execution. (*Id.* at ¶ 12.) Defendants initially made two interest payments to several Plaintiffs from the invested funds of the others. (*Id.* at ¶13.) Additionally, Defendants fabricated various business initiatives and plans to give the illusion that APT and AEO were carrying on business. (*Id.* at ¶ 17.) However, contrary to the representations, no equipment was purchased and consequently, no security interest attained. (*Id.* at ¶ 15.) Further, Defendants misappropriated the investment funds and in the fall of 2012, APT, AEO, and GSE were out of money and unable to carry out their business plans. (*Id.* at ¶¶ 13, 20.)

///

On May 23, 2012, Plaintiffs Tsutsumi, Bomukai, Okuda, Kurebayashi, Kim, Yamada, and Hayase filed suit in state court, alleging (1) fraud and conspiracy to commit fraud; (2) injunctive relief; (3) appointment of a receiver; (4) breach of fiduciary duty as well as the duties of care and loyalty; (5) accounting and constructive trust; (6) breach of contract and breach of the covenant of good faith and fair dealing; (7) conversion and unjust enrichment; and (8) securities fraud under NRS Chapter 90. Plaintiff Teshigahara filed separately, but with nearly identical allegations. Defendants removed the cases on October 11, 2012, and Defendants filed motions to dismiss in both cases. The Court consolidated the cases on May 1, 2013, and granted Defendants' motions to dismiss as to the fraud claims for failure to comply with Fed. R. Civ. P. 9(b). The Court also dismissed the remedy claims and the breach of contract claims as to the individual Defendants.

Plaintiffs then brought a consolidated First Amended Complaint (the "Complaint") alleging (1) fraud and conspiracy to commit fraud against all defendants, (2) breach of duty of loyalty, duty of care, and fiduciary duty against Defendants, (3) breach of contract and the implied covenant of good faith and fair dealing against the Corporate Defendants, (4) Conversion and Unjust enrichment against Defendants, and (5) securities fraud pursuant to NRS Chapter 90. Defendants now move to dismiss the claims against them individually, arguing that the Complaint fails to state a claim upon which relief can be granted.

III. **DISCUSSION**

A. **Legal Standard**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In assessing a 12(b)(6) motion, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" and "[f]actual allegations must be enough to rise above the

speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570. When the claims in a complaint have not crossed the line from conceivable to plausible, the plaintiff's complaint must be dismissed. *Id.*

    B.    Analysis

        1.    **Conspiracy to Commit Fraud and Fraud.**

There are a number of deficiencies with respect to Plaintiffs' first cause of action. Plaintiffs' first cause of action improperly combines two claims for fraud and conspiracy to commit fraud. Moreover, it is not also clear whether these claims are asserted against only Defendants or against Defendants and the Corporate Defendants. The caption under the heading for the first cause of action indicates the cause of action is alleged against "All Defendants" (dkt. no. 42 at 6), but the allegations only identify the conduct of Defendants. Regardless of whether the claims are asserted against Defendants or Defendants and the Corporate Defendants, they contain deficiencies that warrant dismissal as discussed below.

Conspiracy to commit fraud exists when there is "(1) a conspiracy agreement, i.e., a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another; (2) an overt act of fraud in furtherance of the conspiracy; and (3) resulting damages to the plaintiff." *Jordan v. State ex rel. Dept. of Motor Vehicles and Pub. Safety*, 110 P.3d 30, 51 (Nev. 2005), *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 181 P.3d 670 (Nev. 2008). "Thus, an underlying cause of action for fraud is a necessary predicate to a cause of action for conspiracy to defraud." *Id.*

In Nevada, the elements of fraud include: (1) a false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant had an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the

misrepresentation; and, (4) damage to the plaintiff as a result of relying on the misrepresentation. *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998).

Fraud claims must meet a heightened pleading standard under Federal Rule of Civil Procedure 9(b), which requires a party to "state with particularity the circumstances constituting fraud." The plaintiff must plead with particularity "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* at 1108. However, when a plaintiff fails to plead fraud with particularity, "leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988).

Plaintiffs' cause of action for fraud fails to state a claim for three reasons. First, although Plaintiffs have corrected some of the deficiencies identified by the Court in its Order on Defendants' first motions to dismiss, the allegations are still insufficient under Rule 9(b). Plaintiffs allege that Defendants prepared documents containing statements that invested funds would be used for the purchase of equipment that would then secure the solicited loans, that Defendants transmitted these documents to Plaintiffs in Hawaii or Japan between December 2009 and January 2010, and that the invested funds were never used to purchase equipment. Thus, the Complaint details "the who, what, when, where, and how" of the alleged misconduct. Nonetheless, the Complaint, at times, still improperly lumps all defendants together such that the role of the Corporate Defendants in the alleged fraud is unclear. For example, although each individual Plaintiff made only a single investment in one of the Corporate Defendants, the Complaint alleges that all defendants, collectively, made misrepresentations to all Plaintiffs. As a result, it is unclear whether Defendants solicited investments in a particular company from a particular Plaintiff, or if Defendants solicited investments in all the companies, and

Plaintiffs each selected one. Consequently, the requirements of 9(b) are not satisfied. See *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007).

Second, the Complaint lacks any specific allegation that Defendants had a knowledge or belief that their representation was false or had an insufficient basis of information for making their representations. Although Plaintiffs have alleged that the representations that invested funds would be used to purchase equipment ultimately proved untrue, the Complaint lacks any specific allegations that Defendants never intended for monies to be used for equipment purchase at time of the representation. "The mere failure to fulfill a promise or perform in the future . . . will not give rise to a fraud claim absent evidence that the promisor had no intention to perform at the time the promise was made." *Bulbman Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992). Thus, although the statements ultimately proved false and give rise to other claims, a claim for fraud cannot be sustained unless Defendants had no intention of using invested monies for their stated purposes at the time of the representations.

Third, it is unclear from Plaintiffs' allegations under what theory Defendants are individually liable. Plaintiffs have alleged that Defendants were the "principals, and/or officers, and/or directors" of each of the Corporate Defendants, and they prepared documents soliciting investment in those entities. From these allegations, it is not clear whether Plaintiffs are alleging that Defendants' preparation of the documents was outside their scope of authority so as to make them individually liable, or within their scope of authority so as to make the Corporate Defendants liable for the misrepresentations and Defendants individually liable through an alter ego theory. Plaintiffs may plead both theories through alternative pleading, but have failed to do so in this Complaint.

Additionally, Plaintiffs' conspiracy to commit fraud claim suffers from another deficiency separate from the insufficiently pled predicate fraud claim. Plaintiffs allege that "Defendants O'Donnell, Mortensen, John Doe I and Roe Business Entity I conspired to fraudulently and intentionally divert and remove funds from Defendants APT, AEO and

BSE to deny Plaintiffs the full extent of the economic benefit of their investments in Defendants APT, AEO and/or GSE." The inference of this allegation is that after the solicitations were made and investments secured, Defendants, John Doe I, and Roe Business Entity I then conspired to misappropriate funds from the Corporate Defendants. Although this allegation may state a claim of conspiracy to misappropriate funds, it does not state a claim for conspiracy to defraud Plaintiffs. Thus, because the statement lacks any allegation that the alleged conspiracy involved making fraudulent statements to Plaintiffs, Plaintiffs have not pled the element of an overt act of fraud in furtherance of the conspiracy and have not stated a claim for conspiracy *to commit fraud*.

The various other arguments relating to the fraud and conspiracy to commit fraud claims Defendants raise in their Response, however, are unavailing. Defendants place a great deal of emphasis on the fact that they never interacted with Plaintiffs directly. However, this is of no consequence. The fact that the false statements were communicated through an agent does not absolve Defendants of liability. Additionally, the fact that the Complaint does not specifically draw distinction between Mortensen and O'Donnell does not matter. Plaintiffs allege that both Mortensen and O'Donnell participated in the formation of the solicitation documents containing the misstatements. This is sufficient to infer that both Defendants made false statements to all Plaintiffs. Accordingly, as to the fraud and conspiracy to commit fraud claims, Defendants' Motion is granted and the claims are dismissed. Because Plaintiffs can correct the defects, however, Plaintiffs may amend if they so desire. However, the Court cautions Plaintiffs that continued failure to correct the deficiencies identified by the Court will result in dismissal with prejudice. *See Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (holding a district court may properly dismiss a claim with prejudice where plaintiffs have repeatedly failed to correct deficient allegations under Rule 9(b)).

    **2.    Securities Fraud Pursuant to NRS Chapter 90**

As securities fraud must also satisfy the requirements of Rule 9(b), the deficiencies articulated above are fatal to this claim as well. Moreover, because the

Complaint does not detail whether Defendants were acting individually or on behalf of the corporate Defendants, the Complaint does not detail whether Defendants are individually liable for the securities fraud as sellers, or if the corporate Defendants are themselves liable, and Defendants are vicariously liable as controlling persons under NRS 90.660(4). Nonetheless, as Plaintiff may correct the defects, Plaintiffs may amend if they so desire.

### 3. Other Claims

All other claims were included in the first complaints and the Court determined that those claims sufficiently stated claims against Defendants. As the substance of those allegations has not changed in the Amended Complaint, Defendants' Motion is denied as to these claims.

## IV. CONCLUSION

It is therefore ordered that Defendants Lyle Mortensen and Frank O'Donnell's Motion to Dismiss (dkt. no. 48) is granted in part and denied in part. Plaintiffs' claims for fraud, conspiracy to commit fraud, and securities fraud are dismissed without prejudice.

DATED THIS 24th day of January, 2014.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE